**KOUROSH HEMYARI and Union Valley Ranch, L.P., Petitioners,**

v.

**Gary Ben STEPHENS, Stephens Group, L.P., and Stephens Group II, L.P., Respondents.**

No. 10–0389.

Supreme Court of Texas.

Oct. 21, 2011.

Rehearing Denied Jan. 27, 2012.

Donald Colleluori, Figari & Davenport, LLP, Leonard A. Epstein, Davenport & Epstein, P.C., Dallas, TX, for Kourosh Hemyari.

Richard A. Illmer, Brown McCarroll, L.L.P., Anika Christine Stucky, Baker Botts LLP, Dallas, TX, Elizabeth Bloch, Brown McCarroll, LLP, Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, for Union Valley Ranch, L.P.

Craig T. Enoch, Melissa Prentice Lorber, Enoch Kever PLLC, Alex S. Valdes, Kelly H. Winship, Winstead PC, Austin, TX, George Whittenburg, Whittenburg Law, Karl L. Baumgardner, Burnette Law Firm, P.C., Amarillo, TX, Mark Charles Enoch, Glast Phillips & Murray, P.C., Dallas, TX, for Gary Ben Stephens.

Aaron Daniel Day, Texas Land Title Association, Austin, TX, for Amicus Curiae Texas Land Title Association.

PER CURIAM.

In this case we are called upon to decide whether a foreclosure sale violated the automatic stay attendant to all bankruptcy proceedings. James Murphy, pursuant to a bankruptcy court order authorizing the sale of property owned by the Stephens Groups on August 1, 2000, foreclosed on a deed of trust and posted the property for sale on September 5, 2000. Some five years later, the Stephens Groups challenged the sale on the grounds that it violated the automatic stay. The court of appeals agreed, concluding that the violation made the foreclosure void. Because we conclude that the order permitted a sale on or after August 1, 2000, we reverse the court of appeals' judgment without hearing oral argument, pursuant to Texas Rule of Appellate Procedure 59.1.

In the 1990s, Stephens Group, L.P. and Stephens Group II, L.P. (collectively "Stephens Groups") purchased three tracts of land in Dallas County. Gary Ben Stephens was the general partner, and James Murphy was the limited partner. In 1997, Murphy agreed to sell his interest in the property to the Stephens Groups. The agreement called for the Stephens Groups to provide Murphy with the initial sum of $50,000, then an additional sum of $700,000 within 120 days. The Stephens Groups' obligation to pay $700,000 was secured by a deed of trust and a deed in lieu of foreclosure. The Stephens Groups satisfied the initial payment required, but failed to make the $700,000 payment.

When Murphy threatened to foreclose on the deed of trust, the Stephens Groups sought bankruptcy protection. The bankruptcy court entered an order in which it established a procedure for the Stephens Groups to fulfill its original obligations. The order provided that the Stephens Groups were to make payment of $50,000 to Murphy by June 12, 2000, which they did. The order further provided that, after the initial payment, a conditional lift of the automatic stay would "allow [Murphy] to post the property for foreclosure in July, 2000, for a sale on August 1, 2000." Finally, the order provided that if the Stephens Groups did not pay the remaining $650,000 on or before August 1, Murphy could "proceed with the foreclosure sale on August 1, 2000." Murphy did not schedule

the foreclosure sale in July, as allowed by the order, but waited until after the Stephens Groups missed the second payment to schedule the sale for September 5, 2000.

Kourosh Hemyari purchased the property at the foreclosure sale, and Philip and David Huffines, through a limited partnership named Union Valley Ranch, L.P., later purchased two-thirds of the property from Hemyari. Following the foreclosure sale, the proceeds were used to complete the payment to Murphy, and the Stephens Groups moved to dismiss their bankruptcy case, having discharged their debts. Four years later, the Stephens Groups filed this suit in state court. The Stephens Groups asserted violations of the Texas Property Code's foreclosure requirements, such as the trustee's deed's alleged misidentification of the grantor. One year later, the Stephens Groups amended their petition to allege that the foreclosure sale, which took place on September 5, 2000, was void because it violated the express terms of the bankruptcy court's order temporarily lifting the stay. Hemyari subsequently moved for, and was granted, summary judgment.

The court of appeals, based on its conclusion that Hemyari failed to conclusively show the validity of the foreclosure sale, reversed and remanded. *Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex.App.-Dallas 2007, pet. denied). But that court did not address whether the foreclosure sale was, as the Stephens Groups contend, void as a matter of law. On remand, the trial court again granted Hemyari's and now intervenor Union Valley's motions for summary judgment, and this time denied a cross motion by the Stephens Groups for summary judgment on the ground that the sale was void as a matter of law. The court of appeals again reversed the trial court's summary judgment, based on its interpretation of the bankruptcy court's

order: "[W]e believe the clear language of the order unambiguously modified the stay to allow for a sale only on August 1, 2000." 355 S.W.3d at 13. The court rendered judgment for the Stephens Groups. *Id.* at 15. Hemyari and Union Valley Ranch raise a number of arguments challenging the court of appeals' decision, including judicial estoppel and other equitable principles. Because we conclude that the foreclosure sale did not violate the automatic stay, we do not reach those arguments.

■■ The basis for the Stephens Groups' challenge to the foreclosure sale is the language contained in the bankruptcy court's order conditionally terminating the automatic stay. Just as with an unambiguous contract, we enforce unambiguous orders literally. *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex.2003). Only where an order's terms are ambiguous—that is, susceptible of more than one reasonable interpretation—do we look to the surrounding circumstances to discern their meaning. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex.1971). The Stephens Groups argue, and the court of appeals concluded, that the bankruptcy court's order was not ambiguous because it expressly provided for a sale "on August 1, 2000." *See Stephens*, 355 S.W.3d at 13. The Stephens Groups contend that, because it is unambiguous, we may give no meaning to the words "on August 1, 2000" other than that the foreclosure sale could occur *only* on August 1st. But even a "literal" interpretation of an unambiguous order requires us to look at the order as a whole. *See Reiss*, 118 S.W.3d at 441. If possible, we construe an order in a way that gives each provision meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000). Furthermore, under general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results.

*See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 227 (Tex.2010) (stating the rule in the context of statutory interpretation).

■ In this case, the order's terms provided for a sale "on August 1, 2000," but as Hemyari and Union Valley point out, that may have been impossible. The Stephens Groups' first scheduled payment was due by noon on June 12, 2000. The $650,000 payment was due "on or before August 1, 2000," but the order did not specify any particular time. Thus, the presumption is that payment could be made at any point before or throughout August 1st. Reading the order as a whole, we conclude that the Stephens Groups' proposed interpretation would render the entire foreclosure sale provision in the order meaningless. If the foreclosure could not occur until after a failure to pay, but the Stephens Groups could forestall payment until the end of the only day foreclosure was allowed, the Stephens Groups could avoid foreclosure altogether by simply doing nothing.[1] The only way the foreclosure sale could have occurred on August 1st is if the Stephens Groups notified Hemyari ahead of time that payment would not be made. Furthermore, had Murphy actually conducted the foreclosure sale on August 1 st as supposedly required by the order, the Stephens Groups could still have brought this suit challenging the sale, though on grounds that they were not given adequate time to make payment under the "unambiguous" terms of the order. The court of appeals recognized the incongruities in the order, but nevertheless concluded the or-

der "unambiguously modified the stay to allow for a sale only on August 1, 2000." *See Stephens*, 355 S.W.3d at 13. This Court construes the order in a way that avoids such a contradiction.

Because the order's strict, uncontextualized terms made it essentially impossible to hold a valid foreclosure on August 1, 2000, we construe the order in a manner that gives effect to all its provisions and prevents absurdity. We hold that, viewing the instrument as a whole, the plain meaning of the order allowed for a foreclosure sale on or after August 1, 2000. Accordingly, the September 5, 2000 foreclosure sale did not violate the automatic stay.

■ Finally, the court of appeals did not reach the Stephens Groups' arguments concerning defects in the deeds and foreclosure sale process, which pose alternative grounds for affirming the court of appeals' judgment. Because we review the trial court's summary judgment de novo, *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex.2005), we reach those grounds ourselves. The Stephens Groups complain that the omissions of Stephens Groups I and II from the signature line of the deed of trust and from the substitute trustee's deed (both only listed Gary Ben Stephens) render the sale defective and void. It cannot be disputed that Gary Ben Stephens, as the general partner of both groups (and the sole remaining partner in both following Murphy's sale of his interests) had the authority to sell the property and was the sole person to whom notice of the sale had to be given.[2] At bottom, the

---

1. We note that the Property Code brings this absurdity into further relief. The Property Code sets forth a variety of requirements for foreclosure and foreclosure sales. *See* TEX. PROP. CODE §§ 51.0001–.015. One particular provision requires that all public foreclosure sales take place between 10 a.m. and 4 p.m. of the first Tuesday of a month. TEX.

PROP. CODE § 51.002(a). Thus, under the Stephens Groups' interpretation, they had until midnight to pay even though Murphy only had until 4 p.m. to foreclose.

2. The partnership agreements for both groups stated that "[a]ny decision to sell, encumber or convey all or any portion of the Property

Stephens Groups ask the Court to void the sale not because notice or authority was lacking, but merely because Stephens's capacity as general partner was omitted from the face of the signature line on the deed of trust.

■ The Stephens Groups properly note that terms of a deed of trust must be strictly followed. *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex.1982). But this Court acknowledged, even in the case the Stephens Groups rely on, that minor defects in an otherwise valid foreclosure sale do not void it. *Id.* Furthermore, the Stephens Groups do not truly complain of a failure to comply with the deed of trust's terms, but rather of inconsistencies in the deed of trust itself. Citing *Kimberly Development Corp. v. First State Bank of Greens Bayou*, 404 S.W.2d 631, 636 (Tex.Civ.App.-Houston 1966, writ ref'd n.r.e.), they suggest that failure to indicate Stephens's capacity as general partner in *both* the grantor line and signature line of the deed of trust means no partnership property was ever conveyed to the trustee. But in *Kimberly*, a portion of the trustee's name was omitted from the deed of trust altogether, leaving no way of discovering the mistake from the face of the document. *Id.* That court, like this Court in *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380, 383 (1942), acknowledged that a deed and sale are invalid only where the deed of trust requires *extrinsic evidence* for clarification. *See* 404 S.W.2d at 636 ("*Unless there was a mistake so palpable that we could say conclusively as a matter of law from the face of the instrument itself that it had been made* ... then ... the power [of sale] could not properly be exercised." (emphasis added) (quoting *Hart v. Estelle*, 34 S.W.2d 665, 669 (Tex.Civ.App.-Austin 1930), *aff'd*, 55 S.W.2d 510 (Tex. Comm'n App.1932, judgm't adopted))). By contrast, in this case the mistake was so obvious from the face of the deed as to be harmless. Anyone looking at the deed of trust, and noting that the grantor was "Gary Ben Stephens, General Partner of Stephens Group, L.P., and Stephens Group II, L.P.," would readily assume that Stephens likewise signed that same document in that same capacity, and that the omission of the partnership designation from the signature line was a harmless mistake. No reasonable bidder would have been turned away from the foreclosure sale on that basis. *Cf. id.* at 637 (considering the deterrence of bidders a primary concern in invalidating a foreclosure sale). Indeed, Hemyari was not deterred, and his bid satisfied the entire debt owed by the Stephens Groups.

These deed errors, like the alleged violation of the automatic stay, did not affect the validity of the deed of trust or the sale pursuant to it, and the trial court below was correct to grant summary judgment for Hemyari and Union Valley on both grounds. Without hearing argument pursuant to Texas Rule of Appellate Procedure 59.1, we reverse the court of appeals' judgment and render judgment for Hemyari and Union Valley.

■

shall rest solely with the General Partner [Stephens]."