**Affirmed and Opinion filed December 4, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00947-CV

---

### INTERNATIONAL ARMAMENT CORP., FIREARMS INTERNATIONAL INC., AND ALAN ARONSTEIN, Appellants

### V.

### STOCKER & LANCASTER LLP, Appellee

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1083793**

---

### O P I N I O N

This is an appeal from the judgment rendered in a proceeding under the Uniform Enforcement of Foreign Judgments Act in which the trial court held that a California judgment is entitled to full faith and credit and is enforceable in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.001–.008 (West 2015). The judgment debtors challenge the ruling on the grounds that (a) the trial court lost plenary power over the action before it rendered the ruling at issue; (b) the California judgment is void because

it lacked jurisdiction over the judgment debtors; and (c) the California judgment is void due to extrinsic fraud. We affirm.

## I. BACKGROUND

Nevada corporation International Armament Corp., Texas corporation Firearms International, Inc., and the corporations' president, Texas resident Alan Aronstein, (collectively, the "Aronstein Parties") were represented in California litigation by the law firm Stocker & Lancaster, LLP. Stocker & Lancaster subsequently sued the Aronstein Parties in California for non-payment of fees. Attorney Myron F. Smith answered Stocker & Lancaster's suit on behalf of the Aronstein Parties. The suit ended in May 2010 when the trial court sanctioned the Aronstein Parties by striking their pleadings and rendering a default judgment against them for Stocker & Lancaster's unpaid fees of $47,284.69, together with interest, costs, and the attorney's fees incurred in the collection suit.

In October 2016, Stocker & Lancaster instituted proceedings to enforce the judgment in Texas by filing an authenticated copy of the California judgment in Harris County Civil Court at Law No. 4. In a series five orders over the course of nearly a year, the trial court (1) first declared the foreign judgment unenforceable, and (2) held the abstract of judgment and writ of execution to be void, then (3) vacated the order declaring the foreign judgment unenforceable, and (4) abated further rulings to allow the Aronstein Parties time to challenge the foreign judgment in a California court, and finally (5) declared the foreign judgment to be enforceable in Texas. The Aronstein Parties appeal the trial court's judgment.

## II. THE TEXAS TRIAL COURT'S JURISDICTION

In their first issue, the Aronstein Parties argue that the trial court's final judgment, which was signed on November 8, 2017, is void because the trial court's

plenary power expired on July 10, 2017, or on July 11, 2017, or on September 23, 2017. The Aronstein Parties did not file a notice of appeal until December 5, 2017; thus, if they are correct in asserting that the trial court lost plenary power on any of the dates they claim, then their appeal is untimely and must be dismissed. *See* TEX. R. CIV. P. 329b(d), (e) (trial court has plenary for thirty days after a judgment is signed, or if certain post-judgment motions are timely filed, thirty days after the last such motion is overruled by signed order or by operation of law); TEX. R. APP. P. 26.1 (with exceptions inapplicable here, a notice of appeal must be filed within thirty days after a judgment is signed, which is extended to ninety days after judgment if certain types of post-judgment motions or requests are timely filed); *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP*, 404 S.W.3d 75, 80 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the notice of appeal is untimely, the reviewing court lacks jurisdiction and must dismiss the case."). Whether a trial court had jurisdiction to render a decision is a question of law which we review de novo. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

To calculate the expiration of a trial court's plenary power and the deadline to file an appeal, we begin with the date of the final judgment. To determine that, it first is necessary to understand what constitutes a final judgment under the UEFJA.

## A.     Final Judgment under the UEFJA

An authenticated foreign judgment filed in a court of this state is treated as a final judgment of that court, and "is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 35.003. Thus, on the day the authenticated foreign judgment is filed, it constitutes a final judgment, which can be challenged using the same procedures and under the same timelines that apply to a Texas judgment. A motion arguing that a Texas trial court

3

should not afford full faith and credit to a foreign judgment is frequently referred to as a motion to "vacate" and is treated in many ways as a motion for new trial. Such motions to "vacate" a foreign judgment are subject to the procedural rules governing motions for new trials.

Nevertheless, there is a significant difference between the effect of a ruling on a motion to "vacate" a foreign judgment under the UEFJA and a ruling on a similar motion in a non-UEFJA case. In the usual non-UEFJA case, the grant of a motion to vacate or a motion for a new trial is interlocutory because the ruling does not dispose of all parties and all issues. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (an order is not final unless it actually disposes of every pending claim and party or clearly and unequivocally purports to do so). But a Texas trial court has no jurisdiction to set aside another state's judgment and return the parties to the positions they occupied before the foreign judgment was rendered. *See Mindis Metals*, *Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 483 (Tex. App.—Houston [14th Dist.] 2004, pet. denied.). By granting a motion to "vacate" a foreign judgment, a Texas trial court instead determines that the foreign judgment is not entitled to full faith and credit in Texas and is unenforceable here. Because such a determination disposes of all claims and all parties in a UEFJA proceeding, an order granting a motion to "vacate" a foreign judgment is a final appealable judgment. *See id.*

## B.    The Trial Court's Orders

Applying these principles to the chronology of events in this case, we see that Stocker & Lancaster filed the California judgment in Harris County Civil Court at Law No. 4 on October 6, 2016. The California judgment is treated in the same manner as a final judgment of the Harris County court. *See* TEX. CIV. PRAC. & REM. CODE ANN. 35.003(b). It therefore was a final judgment that was presumptively enforceable on the day it was filed. *See Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex. 1975). As

4

required by the UEFJA, Stocker & Lancaster mailed notice of the filing to the Aronstein Parties. *See id.* § 35.004.

## 1. *The Abstract and Unenforceability Orders of December 16, 2016*

On Monday, November 7, 2016, the Aronstein Parties timely filed a motion to "vacate" the judgment. *See* TEX. R. CIV. P. 329b(a), (b) (motions for new trial and motions to modify, correct, or reform judgments must be filed within thirty days after the judgment is signed); TEX. R. CIV. P. 4 (if a time period ends on a weekend or legal holiday, then the time is extended to the next day that is not a weekend or a legal holiday). The filing of the motion extended the trial court's jurisdiction for thirty days after the motion was overruled, whether by a signed order or by operation of law. TEX. R. CIV. P. 329b(e). If the trial court failed to rule on the motion within seventy-five days—that is, by December 20, 2016—then the motion would be overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

On December 16, 2016, the trial court signed two orders. One order simply declared Stocker & Lancaster's Texas abstract of judgment and writ of execution to be void; we will refer to this as the "Abstract Order." Abstracting a judgment is a ministerial act by the clerk of the court. *Attorney General v. Wilson*, 878 S.W.2d 690, 691 (Tex. App.—Beaumont 1994, no pet.) (per curiam). A judgment creditor can obtain an abstract of judgment from the clerk of the court simply by supplying the necessary information and paying the required fee. *See* TEX. PROP. CODE ANN. § 52.002 (West 2014). Similarly, and unless the judgment has been superseded or enforcement otherwise stayed, a judgment creditor can obtain a writ of execution from the court clerk thirty days after a final judgment is signed, or thirty days after a motion for new trial or in arrest of judgment is overruled. *See* TEX. R. CIV. P. 622, 627. Because the Abstract Order has no effect on the finality or validity of the foreign judgment, it does not affect our analysis.

5

The second order was styled, "Order Vacating Sister State Judgment." In that order, the trial court ruled that the California judgment is not entitled to full faith and credit and is unenforceable in this state. We therefore refer to it as "the Unenforceability Order." Because the Unenforceability Order constituted a new final judgment,[1] the timeline for Stocker & Lancaster to challenge the ruling, whether by appeal or by a post-judgment motion, began anew when the Unenforceability Order was signed on December 16, 2016. See Tex. R. App. P. 4.3(a); Tex. R. Civ. P. 329b(h).

### 2. The Vacatur Order of January 17, 2017

Four days after the trial court signed the Unenforceability Order, Stocker & Lancaster timely filed a motion for reconsideration. The motion was, in effect, a motion to motion to modify, correct, or reform the trial court's judgment. See Tex. R. Civ. P. 329b(g). Such a motion extends the trial court's plenary power and the time to appeal in the same way that a motion for new trial does. See id.

On January 17, 2017—well before Stocker & Lancaster's motion for reconsideration would have been overruled by operation of law—the trial court signed an order we will refer to as "the Vacatur Order" because it vacated the Unenforceability Order.[2] With the signing of the Vacatur Order on January 17, 2017, Stocker & Lancaster's foreign judgment again became a final judgment entitled to full faith and credit unless the Aronstein Parties successfully challenged it.

As part of the Vacatur Order, the trial court set the Aronstein Parties' previously filed Motion to Vacate Sister State Judgment for a hearing. Because the trial court could, and did, treat the motion to vacate as "refiled" on January 17, 2017, we do the

---

[1] See Mindis Metals, 132 S.W.3d at 483.

[2] The Vacatur Order originally vacated the Abstract Order as well, but as part of the trial court's Abatement Order discussed infra, the trial court modified the Vacatur Order to delete that language, so that the Vacatur Order ultimately vacated only the Unenforceability Order.

same. *See* TEX. R. CIV. P. 306c. The motion is treated as a motion for new trial; thus, barring intervening rulings, the motion would be overruled by operation of law seventy-five days later.

### 3.    *The Abatement Order of February 9, 2017*

There was, however, an intervening ruling. The trial court signed an order on February 9, 2017, styled, "Order Abating All Actions for 120 Days" ("the Abatement Order"). In the Abatement Order, the trial court stated that "any further rulings on the pending motions should be abated for 120 days" to allow the Aronstein Parties time to challenge the foreign judgment in California. The trial court stated, "If no challenging action(s) is brought within the aforesaid 120-day abatement period, then this Court will proceed to rule on any pending motions on or after the 121st day after the date of this Order."[3]

### 4.    *The Enforcement Order of November 8, 2017*

The Aronstein Parties did not challenge the foreign judgment in California, and on November 8, 2017—a date "on or after the 121st day after the date of the [Abatement Order]"—the trial court signed its order expressly denying the Aronstein Parties' motion to vacate the California judgment and instead ruling that the California judgment is "a valid and final enforceable judgment worthy of full faith and credit and enforcement in Texas." We therefore refer to the order signed on November 8, 2017, as "the Enforcement Order."[4] The trial court additionally stated in the Enforcement

---

[3] The UEFJA allows the trial court to stay enforcement of a foreign judgment to allow the judgment debtor to appeal the foreign judgment or to seek a stay of execution. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.006. The parties do not challenge the validity or propriety of the Abatement Order; they disagree only about its effect.

[4] In the Enforcement Order, the trial court repeated its vacatur of the Unenforceability Order; however, that language is surplusage because the Unenforceability Order was vacated by the Vacatur Order of January 17, 2017, and never reinstated.

Order that Stocker & Lancaster "is entitled to executions or other writs and processes in this cause as needed or requested to enforce [its] judgment, including a new Abstract of Judgment and/or a new Writ of Execution, if any."

## C. The Aronstein Parties' Jurisdictional Arguments

The Aronstein Parties contend that the trial court lost plenary power before it signed the Enforcement Order. They assert that the Abatement Order became a final order 120 days later—that is, on June 9, 2017—and they argue that the trial court's plenary power extended only through July 10 or July 11, 2017 (if no motion for new trial was filed) or September 23, 2017 (if a motion for new trial was timely filed and overruled by operation of law).[5]

We determine whether the Abatement Order became a final order by applying the applicable canons of construction. We construe a court order as whole, and if possible, we give each provision meaning. *See Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam). If the order is unambiguous, we construe it literally, but if its terms are subject to more than one reasonable interpretation, then we look to the surrounding circumstances to discern their meaning. *Id.*

The Aronstein Parties cite no authority for their assumption that the Abatement Order became a final order 120 days after it was signed. Moreover, this contention is contrary to the order's terms. A comparison of the Abatement Order with the order at issue in *Hemyari v. Stephens* illustrates why this is so.

In *Hemyari*, a court order permitted a foreclosure sale "on August 1, 2000," but the payment that would prevent foreclosure was due at any time "on or before August

---

[5] Regarding the later date, the Aronstein Parties state that the trial court lost plenary power on September 23, 2017, but they also state that "September 23, 2017 is 30 days after August 23, 2017." Because September 22nd is thirty days after August 23rd, the reference to September 23rd may be a clerical or calculation error, but it does not affect our analysis.

8

1, 2000." *See id.* at 627. The foreclosure could take place only if the payor failed to make the payment by the end of August 1, 2000; thus, if the order meant that the sale could take place *only* on August 1, 2000, then the payor could prevent foreclosure by doing nothing. *See id.* The Supreme Court of Texas ruled that, construing the order as a whole, the order allowed for a foreclosure sale on *or after* August 1, 2000. Stated differently, the action that would prevent foreclosure had a hard deadline, but the foreclosure—the consequence of the payor's failure to meet the hard deadline—did not.

The trial court in this case was more explicit than the trial court in *Hemyari.* Here, the trial court's order allowed the Aronstein Parties a full 120 days to challenge the judgment in a California court, and if they provided certified proof that they did so, then the trial court would extend the abatement until the California action concluded. The trial court further ordered, "If no challenging action(s) is brought within the aforesaid 120-day abatement period, then this Court will proceed to rule on any pending motions on or after the 121st day after the date of this Order." This language makes it clear that the "120-day abatement period" refers to the time for the Aronstein Parties to file a California action, not to the time for the trial court to rule. Construing the order as a whole, the statement that "further rulings on the pending motions should be abated for 120 days" means that the trial court abated further ruling for *at least* 120 days. The Aronstein Parties' opportunity to challenge the foreign judgment in a California court had a hard deadline of 120 days, but the Texas court's rulings on the pending motions— the consequence of the Aronstein Parties failure to meet the hard deadline—did not.

We therefore conclude that the Abatement Order was not a final order when rendered, and it did not become a final order merely by the passage of time. Rather, the Abatement Order deferred any ruling on the pending motions to an unspecified date

9

"on *or after* the 121st day after the date of [the Abatement Order]."[6]  The deferment ended on November 8, 2017, when the trial court signed the Enforcement Order denying the Aronstein Parties' motion to vacate the California judgment.  Because the Enforcement Order is the trial court's final judgment, its plenary power did not expire until December 8, 2017.  *See* TEX. R. CIV. P. 329b(d).

Because the Aronstein Parties filed this appeal less than thirty days after the Enforcement Order was signed, their appeal is timely, and we have jurisdiction over their appeal.  *See* TEX. R. APP. P. 26.1.  On the other hand, the same facts and law that demonstrate our jurisdiction over this appeal also defeat the Aronstein Parties' argument that the Enforcement Order is void for lack of jurisdiction.  We accordingly overrule their first issue.

### III.  THE CALIFORNIA TRIAL COURT'S JURISDICTION

In their second issue, the Aronstein Parties contend that the California judgment is unenforceable because the California court lacked personal jurisdiction over them.  *See H. Heller & Co. v. La.-Pac. Corp.*, 209 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (foreign court's lack of personal jurisdiction is an exception to the requirement of full faith and credit).  When reviewing a Texas trial court's ruling regarding the enforcement of a foreign judgment, we determine the foreign judgment's validity under the laws of the state that rendered it.  *See id.*; *Mindis Metals*, 132 S.W.3d at 484.  Texas courts presume a foreign judgment is valid absent clear and convincing evidence that the judgment is invalid under the laws of that state. *Mindis Metals*, 132 S.W.3d at 484.

The Aronstein Parties first assert that the California judgment is void because they were not served with citation; however, the Aronstein Parties appeared in the suit

---

[6] Emphasis added.

through attorney Myron F. Smith, and under California law, "[a] general appearance by a party is equivalent to personal service of summons on such party." CAL. CIV. PROC. CODE § 410.50(a).

The Aronstein Parties next contend that Smith was not authorized to represent them. In a carefully worded affidavit, Alan Aronstein stated,

> I, in my role as president of International Armament Corporation and Firearms International Inc. have never entered into *an attorney client contract* with an individual named Myron F. Smith to represent International Armament Corporation or Firearms International, Inc. [in the California suit]. Furthermore, I personally did not enter into *an attorney client contract* with Myron F. Smith in which he was to represent me in the California lawsuit . . . .[7]

Tellingly, Aronstein does not deny that the Aronstein Parties had an attorney-client relationship with Smith; he states only that they had no contract. Under California law, however, no contract was necessary. *See Lister v. State Bar*, 51 Cal. 3d 1117, 1126, 800 P.2d 1232, 1237 (1990) ("No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important." (quoting *Farnham v. State Bar*, 17 Cal. 3d 605, 612, 552 P.2d 445, 449 (1976))). Similarly, Aronstein states that "[t]he *answer* filed by Myron F. Smith on behalf of [the Aronstein Parties] was not authorized by me,"[8] but he does not deny that Smith was authorized to represent them.

Smith, on the other hand, attested that Alan Aronstein asked him to represent the Aronstein Parties in the California suit and that he, Smith, received a copy of the suit either from Aronstein or from Richard Fuque, who is corporate counsel for International Armament Corp. and Firearms International, Inc. Smith states that he received the fee for filing the answer from one of the corporate Aronstein Parties, and

---

[7] Emphasis added.

[8] Emphasis added.

11

that he would not have filed the answer if he had not received the fee. According to Smith, he received requests for production in the California suit, but Fuque told him that the Aronstein Parties would not produce the requested documents. Smith states that he had the following conversation with Fuque about the Aronstein Parties' responsibility to produce the documents: "I said the judge in the case would issue sanctions if they did not. His response was "let her [sic: the judge]. We can fight it here in Texas if they try to bring it here."[9]

Comparing what each of these two witnesses said and did not say—including the failure of the Aronstein Parties to deny the specific facts to which Smith attested and which demonstrate that Smith represented them with their knowledge and at their request—the record supports the trial court's rejection of the Aronstein Parties' argument that "Mr. Smith, for whatever reason, entered into an unauthorized general appearance" on their behalf. As the Supreme Court of Texas stated in another context, "[I]t blinks reality to assume that the attorney was a volunteer."[10]

Because the Aronstein Parties failed to show by clear and convincing evidence that the California court lacked jurisdiction over them, we overrule the Aronstein Parties' second issue.

## IV. EXTRINSIC FRAUD

In their final issue, the Aronstein Parties argue that the California judgment is unenforceable due to extrinsic fraud. *See H. Heller & Co.*, 209 S.W.3d at 849 (full faith and credit is not extended to a foreign judgment procured by extrinsic fraud). They contend that Stocker & Lancaster committed extrinsic fraud by sending a copy of the California judgment to the attorney representing the Aronstein Parties rather than

---

[9] Alterations in original.

[10] *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).

12

directly to them. According to the Aronstein Parties, this conduct denied them "the opportunity to fully litigate upon the trial all the rights or defenses they were entitled to assert."

In support of this position, the Aronstein Parties rely on section 684.020 of the California Code of Civil Procedure. That provision states in pertinent part, "Except as provided in subdivision (b), when a writ, notice, order, or other paper is required to be served *under this title* on the judgment debtor, it shall be served on the judgment debtor instead of the attorney for the judgment debtor." CAL. CIV. PROC. CODE § 684.020(a) (emphasis added). "This title" is Title 9, known as "the Enforcement of Judgments Law." *See id.* § 680.010. As its name suggests, it deals with post-judgment enforcement measures. The Aronstein Parties do not identify any provision in Title 9 requiring service upon the judgment debtor of the notice of entry of judgment.

Our own research identifies the provision governing such notice in Title 8, appropriately called "Of the Trial and Judgment in Civil Actions." That provision does not require the notice to be served on the judgment debtor rather than on counsel but instead is subject to the general rules permitting notices to be served on counsel. *See id.* § 664.5(a) (a prevailing party represented by counsel in a contested action must prepare and serve "a copy of the notice of entry of judgment to all parties who have appeared in the action"); *see also id.* § 1010 ("Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code."); § 1011 ("The service may be personal, by delivery to the party or attorney on whom the service is required to be made, or it may be as follows . . . .").

Moreover, the complaint in the California action identifies each of the Aronstein Parties as a non-resident. Regarding service on non-residents, the California Civil Procedure Code provides as follows:

13

> When a plaintiff or a defendant, who has appeared, resides out of the state, and has no attorney in the action or proceeding, the service may be made on the clerk of the court, for that party. But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except service of subpoenas, of writs, and other process issued in the suit, and of papers to bring the party into contempt. . . .

*Id.* § 1015. In accordance with this provision, Stocker & Lancaster served the notice of entry of judgment on Smith, as the Aronstein Parties' counsel.

Because the Aronstein Parties have failed to show by clear and convincing evidence that Stocker & Lancaster procured the California judgment through extrinsic fraud, we overrule their third issue.

## V. Conclusion

The trial court had jurisdiction to render its judgment upholding the enforceability of the California judgment, and the Aronstein Parties failed to prove by clear and convincing evidence that the foreign judgment was not entitled to full faith and credit. We therefore affirm the trial court's judgment.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Jamison, and Brown.

14