**Opinion filed October 24, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00204-CV

_____

## IN RE SCHLUMBERGER TECHNOLOGY CORPORATION AND THE DOW CHEMICAL COMPANY

**Original Mandamus Proceeding**

### MEMORANDUM OPINION

Relators, Schlumberger Technology Corporation (Schlumberger) and the Dow Chemical Company (Dow), filed this original petition for writ of mandamus in which they request that we instruct the Honorable Jeffrey Todd Robnett, Presiding Judge of the 441st District Court of Midland County, to vacate an order entered on May 28, 2019, in Cause No. CV48034. In that order, Judge Robnett denied Relators' motion to dismiss the case. We conditionally grant the petition for writ of mandamus.

We note at the outset that this case has a unique factual and procedural history. In 2009, the Texas Commission on Environmental Quality tested the groundwater underneath the Cotton Flat community in Midland and discovered that it was

contaminated with hexavalent chromium. The Environmental Protection Agency (the EPA) subsequently designated the area impacted by the contamination as a "Superfund Site."

Over three hundred individuals, who are the real parties in interest in this proceeding, sued Relators and Lear Corporation[1] in 2011. Real Parties in Interest alleged that they had been harmed by the contamination and that Relators and Lear were the source of the contamination. The suit was essentially dormant until late 2016 when Real Parties in Interest served Schlumberger with written discovery. Schlumberger responded with a motion for a protective order and a motion for a *Lone Pine* order.[2] Schlumberger specifically requested that Real Parties in Interest be required to provide, within 120 days, affidavits that contained information on each individual's alleged exposure to the contamination and injuries from the contamination. Schlumberger's motion was set for a hearing on April 20, 2017.

Prior to the hearing, the parties engaged in discussions about abating the case. On April 11, 2017, Denise Scofield, counsel for Schlumberger, indicated in an e-mail to Brian Carney, counsel for Real Parties in Interest,[3] that Schlumberger was

---

[1]While Lear Corporation is technically a real party in interest, its interests are more closely aligned with Relators. Accordingly, our reference in this opinion to "Real Parties in Interest" does not include Lear Corporation.

[2]A *Lone Pine* order, which has its origins in *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. 1986), is a prediscovery order designed to handle the complex issues and potential burdens on the defendants and the court in mass tort litigation. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[3]Carney represented those individuals who filed suit against Relators in *Felicita Acosta et al. v. The Dow Chemical Co. et al.* Approximately forty other individuals, represented by different counsel, sued Relators in *George and Lesia Laing et al. v. Schlumberger Ltd. et al.* The trial court granted the parties' agreed motion and consolidated the two cases. During the hearing on Relators' motion to dismiss and Real Parties in Interest's motion to stay, counsel for the *Laing* plaintiffs admitted that he had received a copy of the Abatement Order and had not objected to the entry of the order. The *Acosta* plaintiffs and the *Laing* plaintiffs have the same counsel in this original proceeding and rely on the same arguments. No party has argued that the *Laing* plaintiffs should be addressed separately from the *Acosta* plaintiffs.

2

willing to "table" its motion for a *Lone Pine* order and agree to an administrative abatement of the case on the following conditions:

> [I]f EPA determines Schlumberger is in whole or in part the source of the chromium contamination on or before April 13, 2019, plaintiffs may reopen the case provided they do so within 30 days of the EPA's determination and if EPA does not determine that Schlumberger is in whole or in part the source of the chromium contamination on or before April 13, 2019, your clients' case will be dismissed. (The year 2019 is ten years after the chromium purportedly was discovered.)

On April 13, 2017, Scofield provided Carney with a revised proposed order. Carney responded that he would "look it over" and asked Scofield if Mike Brem, counsel for Dow, was "opposed to this idea." Scofield responded that both Dow and Schlumberger would "prefer a dismissal" but that she understood that "the optics of a dismissal are less appealing" to Real Parties in Interest. Scofield stated that "functionally we achieve the same thing with abatement – if EPA names [Schlumberger] as the source (or a source) in the next 2 years, you can re-open. If not, 10 years will have passed, and we can move to dismiss." Carney stated that he would contact Brem "to make sure he doesn't oppose it."

In an e-mail to Scofield and Brem on April 14, 2017, Carney requested that the proposed order be changed to include Dow. Both Brem and Scofield agreed to the change because it was really a "location" or "facility/site" issue rather than an issue related to any particular entity.

On April 17, 2017, Real Parties in Interest filed an unopposed motion to abate the case. In the motion, Real Parties in Interest represented to the trial court:

> The suit *should not go forward unless* (1) the [EPA] makes a written finding that [Schlumberger] is a source in whole or in part of the hexavalent chromium contamination in the Cotton Flat community in Midland, Texas, on or before April 15, 2019, and (2) [Real Parties in Interest] move to re-open the case on or before 60 days from the date of the EPA's written finding.

(Emphasis added). Real Parties in Interest stated that the parties had not conducted significant discovery but that there was a hearing set on Schlumberger's motion for a protective order and motion for a *Lone Pine* order. Real Parties in Interest indicated that, "[r]ather than moving forward with discovery," they wished "to abate this lawsuit pending further regulatory investigation regarding the source of the hexavalent chromium contamination at the site." Real Parties in Interest specifically requested that the case be abated "in its entirety, pursuant to the parties' agreement below." In their prayer for relief, Real Parties in Interest set out the parties' agreement.

On April 19, 2017, the Honorable Rodney W. Satterwhite[4] signed an order that granted the motion to abate (the Abatement Order). In conformance with the relief requested by Real Parties in Interest, Judge Satterwhite ordered:

1. If the [EPA] makes a written finding on or before April 15, 2019 that [Schlumberger] or [Dow] is a source in whole or in part of the hexavalent chromium contamination in the Cotton Flat community in Midland, Texas, [Real Parties in Interest] may re-open the case if they make such a motion on or before 60 days from the date of the EPA's written finding. If [Real Parties in Interest] fail to move to re-open the case on or before 60 days from the date of the EPA's written finding, this Court shall dismiss this litigation on the motion of any party.

2. If the EPA does not make a written finding that [Schlumberger] or [Dow] is a source in whole or in part of the hexavalent chromium contamination in the Cotton Flat community in Midland, Texas on or before April 15, 2019, this Court shall dismiss this litigation on the motion of any party.

3. [Real Parties in Interest] may non-suit their claims at any time.

---

[4]Judge Satterwhite retired effective December 31, 2018, and Judge Robnett was sworn in as the presiding judge of the 441st District Court on January 1, 2019.

The EPA did not make a finding as to the source of the hexavalent chromium contamination by April 15, 2019. Relators subsequently moved to dismiss the case on April 16, 2019. Relators sought a dismissal pursuant to the terms of the Abatement Order. In response, Real Parties in Interest moved to stay the Abatement Order "pending further information from the EPA." Real Parties in Interest admitted that "the parties entered into an agreement and the Court ordered abatement of the action pending investigation by the EPA," but Real Parties in Interest argued that the abatement period "was expected to provide the EPA enough time to finish the investigation and declare a source of the contamination at issue."

Judge Robnett heard the competing motions on May 24, 2019. During the hearing, Carney represented to Judge Robnett that "the whole idea [of the abatement] was to let EPA make a decision" and that the two-year time period in the Abatement Order was "arbitrary." Carney recognized that "the order reads the way the order reads," but he asserted that that "is not the intent of the parties nor was it the intent of the parties when we drafted this, that no decision by the EPA would be a decision that would be a negative finding as to Schlumberger, you know, it says if they make no finding, then Schlumberger is dismissed."

On May 28, 2019, Judge Robnett signed an order that denied Relators' motion to dismiss. Judge Robnett found that the Abatement Order was:

> [V]ague and ambiguous on its face for the reason that it is not applicable to and does not provide for the contingency of a failure by the federal [EPA] to act or to complete its investigation during the time period between the date the Abatement Order was signed and April 15, 2019, the date stated in the order as the date by which a conclusion by the EPA is due as to causation or lack thereof as to and by the Defendants.

Judge Robnett set the case for trial on December 2, 2019.

Relators filed this petition for writ of mandamus asserting that Judge Robnett abused his discretion by failing to enforce the Abatement Order and that they have

no remedy by appeal. Relators specifically argue that the Abatement Order is not ambiguous, that the parties had a valid agreement pursuant to Rule 11 of the Texas Rules of Civil Procedure, that the parties' agreement was set out in the Abatement Order, and that Judge Robnett had a ministerial duty to enforce the Abatement Order as written. Relators further argue that they have no adequate remedy by appeal because requiring them to proceed to trial would deprive them of their contractual right to have the case dismissed.

In response, Real Parties in Interest assert that Judge Robnett did not abuse his discretion when he denied Relators' motion to dismiss because he (1) had the inherent power to reconsider the Abatement Order, (2) properly applied the law in determining that the Abatement Order was ambiguous, and (3) could determine whether the parties' agreement was valid and enforceable before he was required to enforce it. Real Parties in Interest further contend that the denial of a motion to dismiss is an incidental ruling for which Relators have an adequate remedy by appeal and that Relators would not lose any substantial right by being required to proceed to trial.

*Analysis*

Mandamus is an extraordinary remedy, *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam), and is warranted only when the trial court clearly abused its discretion and there is no adequate remedy by appeal, *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 130 (Tex. 2018) (orig. proceeding). The relator bears the burden of proving both of these requirements. *In re H.E.B. Grocery*, 492 S.W.3d at 302; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion when its ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding).

6

"Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly." *Id.*; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding) ("[A] trial court has no 'discretion' in determining what the law is or applying the law to the facts." (quoting *Walker*, 827 S.W.3d at 840)).

Relators contend that the parties' agreement constituted a valid Rule 11 agreement, *see* TEX. R. CIV. P. 11; that the parties' agreement was memorialized in the Abatement Order; that the Abatement Order is unambiguous; and that Judge Robnett abused his discretion by failing to correctly apply the law to the order. We agree.

"Rule 11 agreements are contracts relating to litigation." *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.). To be effective, a Rule 11 agreement must consist of "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)). A series of letters or e-mails can establish a Rule 11 agreement between the parties. *Id.* Rule 11 agreements are construed under the same rules as a contract. *Id.* If a Rule 11 agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous and will be construed as a matter of law. *See id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

In this case, the parties reached an agreement as to the terms under which the case would be abated. Based on Real Parties in Interest's request in their motion, Judge Satterwhite enforced the parties' agreement by signing the Abatement Order. As such, the Abatement Order memorialized the parties' Rule 11 agreement. *See id.* By entering the Abatement Order, the trial court made the parties' Rule 11 agreement the order of the court. *See Padilla*, 907 S.W.2d at 461. In this regard, a trial court

7

has a ministerial duty to enforce a valid Rule 11 agreement. *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561 (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996)).

Real Parties in Interest challenged the Abatement Order by asserting that the parties' Rule 11 agreement, as memorialized in the Abatement Order, was ambiguous. Real Parties in Interest did not challenge the procedure that Relators employed to seek enforcement of the Abatement Order. Also, Real Parties in Interest did not assert that they withdrew their consent to the Rule 11 agreement at any point. Real Parties in Interest asserted only that the Abatement Order did not reflect the agreement that they made with Relators.

We apply the same rules of interpretation in construing the meaning of a court order as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding); *In re C.A.T.*, 316 S.W.3d 202, 210 (Tex. App.—Dallas 2010, no pet.) ("When faced with an agreed order from the trial court, we interpret the order as if it were a contract between the parties; our interpretation is governed by the usual rules of contract interpretation."). We construe an order that can be given a certain or definite legal meaning as a matter of law. *Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 264 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied])); *see also URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) ("Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law that we review de novo using well-settled contract-construction principles."). "Even under an abuse of discretion standard, we do not defer to the trial court on questions of law, which we review de novo." *Mullin*, 405 S.W.3d at 264.

In construing an order, we look at the instrument as a whole and, if possible, interpret it in a way that gives meaning to each provision. *Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam); *see also Pathfinder Oil & Gas, Inc. v.*

*Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). Further, under general rules of construction, we avoid strictly construing an order's language if it would lead to absurd results. *Hemyari*, 355 S.W.3d at 626.

We may consider the objectively determinable facts and circumstances surrounding the entry of the order to aid in our interpretation of its language. *Pathfinder Oil & Gas*, 574 S.W.3d at 889; *URI, Inc.*, 543 S.W.3d at 757–58. However, we construe an unambiguous order literally, *Hemyari*, 355 S.W.3d at 626, and the surrounding facts and circumstances cannot be used to "augment, alter, or contradict the terms of an unambiguous" order. *URI, Inc.*, 543 S.W.3d at 758; *see also Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) ("While extrinsic evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the circumstances surrounding its execution to determine whether an ambiguity exists."). We may not "'rely on evidence of surrounding circumstances to make the language say what it unambiguously does not say' or 'to create an ambiguity.'" *Pathfinder Oil & Gas*, 574 S.W.3d at 889 (quoting *URI, Inc.*, 543 S.W.3d at 765, 767). Further, we may not rewrite the order or "add to or subtract from its language." *URI, Inc.*, 543 S.W.3d at 770 (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)).

An order is unambiguous if it is worded so that it can be given a certain or definite meaning. *Id.*; *Int'l Armament Corp. v. Stocker & Lancaster LLP*, 565 S.W.3d 823, 829 (Tex. App.—Houston [14th Dist.] 2018, no pet.). An order is ambiguous if it is "susceptible of more than one reasonable interpretation." *Hemyari*, 355 S.W.3d at 626. An ambiguity in an order may be either "patent" or "latent." *URI, Inc.*, 543 S.W.3d at 765; *In re Estate of Hoskins*, 501 S.W.3d 295, 302 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). A patent ambiguity is evident on the face of the order. *URI, Inc.*, 543 S.W. 3d at 765; *Hoskins*, 501 S.W.3d at 302. A latent ambiguity occurs when an order, unambiguous on its face, is applied

to the subject matter with which it deals and an ambiguity appears by reason of a collateral matter. *URI, Inc.*, 543 S.W.3d at 765; *Hoskins*, 501 S.W.3d at 302. Extrinsic evidence may not be used to create a latent ambiguity. *URI, Inc.*, 543 S.W.3d at 765. Rather, the ambiguity must become apparent when the order is read in the context of the surrounding circumstances. *Id.*

In this case, the literal language of the Abatement Order provides for two circumstances. First, the EPA finds before April 15, 2019, that Schlumberger or Dow is a source of the hexavalent chromium, in which case Real Parties in Interest may proceed with their case. Second, the EPA does not find before April 15, 2019, that Schlumberger or Dow is a source of the hexavalent chromium, in which case the trial court "shall" dismiss the case on the motion of any party. Under the literal language of the Abatement Order, the EPA's failure to make any finding falls under the second circumstance.

Real Parties in Interest assert that, regardless of the language used in the order, the Abatement Order is susceptible to more than one meaning because it fails to address the situation in which the EPA did not make any finding prior to April 15, 2019. Real Parties in Interest urge that the surrounding circumstances regarding the parties' agreement and the entry of the Abatement Order indicate that the order was simply intended to delay discovery until the EPA determined the source of the hexavalent chromium contamination and that there was no intent to dismiss the case unless the EPA found that Schlumberger and Dow did not cause the contamination. Real Parties in Interest are essentially arguing that there is latent ambiguity in the Abatement Order.

As noted above, we may not consider the surrounding facts and circumstances to make the language of the Abatement Order "say what it unambiguously does not say." *URI, Inc.*, 543 S.W.3d at 767 (quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)). But, in any event, the facts and circumstances surrounding the

parties' agreement, when applied to the entry of the Abatement Order, do not demonstrate that the order is ambiguous.

Scofield clearly stated in her e-mails to Carney that Schlumberger would agree to abate the case only on the condition that, if the EPA did not determine that Schlumberger was a source of the chromium contamination on or before April 15, 2019, the case would be dismissed. In two different e-mails, Scofield noted that, by 2019, it would have been ten years since the hexavalent chromium contamination was discovered. Scofield specifically told Carney that Relators wanted a dismissal; that she understood the "optics" of an abatement as opposed to a dismissal; and that, in Schlumberger's opinion, the abatement "functionally" achieved the same thing as dismissal because, if the EPA did not name Schlumberger as a source in the next two years, Schlumberger could move to dismiss. In response, Carney's only request was that Dow be included in the order.

In their motion to abate, Real Parties in Interest represented to Judge Satterwhite that the case should not go forward unless the EPA found within the next two years that Schlumberger was a source of the hexavalent chromium contamination. Real Parties in Interest set out the parties' agreement regarding the abatement of the case. That agreement was incorporated in the Abatement Order which, as discussed above, unambiguously addresses the outcome of the case if the EPA failed to make a finding by April 15, 2019, that either Schlumberger or Dow was a source of the contamination. Finally, if, as Real Parties in Interest now contend, the parties' agreement, as manifested in the Abatement Order, was to simply delay discovery until the EPA made a determination of the source of the contamination, there would have been no need to abate the case until April 19, 2019; rather, the parties would have agreed to abate the case until the EPA reached a decision.

11

We conclude that, as a matter of law, the language of the Abatement Order, which was based on the parties' Rule 11 agreement, is unambiguous. *See URI, Inc.*, 543 S.W.3d at 763–64 (concluding that, when construing the language of an agreement, "[o]bjective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not'" (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010))). Furthermore, Judge Robnett did not have the inherent power to reconsider the Abatement Order because it memorialized the parties' Rule 11 agreement and a trial court has a ministerial duty to enforce a valid Rule 11 agreement. *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 560.

Pursuant to the literal language of the Abatement Order, Judge Robnett was required to dismiss the case on the motion of any party if the EPA failed to make a determination on or before April 15, 2019, that either Schlumberger or Dow was a source of the hexavalent chromium contamination. *See Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The word 'shall' as used in contracts is generally mandatory, operating to impose a duty."). Because an unambiguous order must be enforced literally, *Hemyari*, 355 S.W.3d at 626; *Int'l Armament Corp.*, 565 S.W.3d at 829, Judge Robnett abused his discretion when he failed to grant Relators' motion to dismiss.

The second question is whether Relators have an adequate remedy by appeal. The adequacy of an appellate remedy depends heavily on the circumstances and requires a balancing of the benefits of mandamus review against the detriments. *In re Coppola*, 535 S.W.3d 506, 509 (Tex. 2017) (orig. proceeding) (per curiam); *In re Prudential*, 148 S.W.3d at 136. Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding).

Relators argue that they are entitled to relief by mandamus because, regardless of the outcome at trial, they would have been deprived of their right to have the case dismissed. Citing to *In re Barnett Gathering, L.P.*, No. 11-09-00351-CV, 2010 WL 747683, at *1 (Tex. App.—Eastland Mar. 5, 2010, orig. proceeding [mand. denied]) (per curiam) (mem. op.), Real Parties in Interest respond that a denial of a motion to dismiss is an incidental ruling that will not be corrected by mandamus.

In *In re Barnett Gathering*, we relied on *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 59 (Tex. 1991) (orig. proceeding), for the proposition that, "[a]bsent extraordinary circumstances not present here, a denial of a motion to dismiss or plea in abatement is a ruling incident to the ordinary trial process which will *not* be corrected by mandamus, but by the legal remedy of the ordinary appellate process." 2010 WL 747683, at *1. We concluded that extraordinary circumstances were not present in that case because the only remaining issue in the case was the amount the property owner should be awarded as compensation for condemned property. *Id.* Neither *In re Barnett Gathering* nor *Hooks* stands for the proposition that mandamus relief is never appropriate to correct a trial court's improper denial of a motion to dismiss. Rather, the determination of whether a party has an adequate remedy by appeal "depends heavily on the circumstances presented." *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam) (quoting *In re Prudential*, 148 S.W.3d at 136–37).

Although "mandamus review is not—and should not be—an easily wielded tool," it may be essential to review significant rulings in exceptional cases "to, among other things, 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re J.B. Hunt Tranp., Inc.*, 492 S.W.3d 287, 299 (Tex. 2016) (orig. proceeding) (quoting *In re Prudential*, 148 S.W.3d at 136). Indeed, the supreme court has noted that it has made the "most frequent use" of mandamus relief in cases "in which the very

13

act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved." *In re McAllen Med. Ctr.*, 275 S.W.3d at 465. These circumstances have included forcing parties to trial in a case in which they agreed to arbitrate, *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding); forcing parties to trial on an issue that they agreed to submit to appraisers, *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding); forcing parties to a jury trial when they agreed to a bench trial, *In re Prudential*, 148 S.W.3d at 138; and forcing parties to trial in a venue other than the one that they contractually selected, *In re Nationwide*, 494 S.W.3d at 712.

In this case, Relators and Real Parties in Interest contractually agreed that Schlumberger would "table" its motion for a *Lone Pine* order and that the case would be abated on certain conditions. One of those conditions was that, if the EPA did not make a written finding on or before April 15, 2019, that either Schlumberger or Dow was a source of the hexavalent chromium contamination, the trial court was required to dismiss the case on the motion of any party. The EPA did not make a written finding by April 15, 2019, that either Schlumberger or Dow was a source of the hexavalent chromium contamination, and Relators, therefore, are entitled to the agreed-upon dismissal. Because requiring Relators to proceed to trial would "defeat the substantive right involved," Relators do not have an adequate remedy by appeal. *See In re McAllen Med. Ctr.*, 275 S.W.3d at 465; *In re Prudential*, 148 S.W.3d at 136–37.

We conclude that Judge Robnett abused his discretion by denying Relators' motion to dismiss and that Relators do not have an adequate remedy by appeal. Therefore, we conditionally grant Relators' petition for writ of mandamus. We direct the Honorable Jeffrey Todd Robnett to vacate the order that he signed on May 28, 2019, which denied Relators' motion to dismiss, and to enter an order that

14

dismisses the case. A writ of mandamus will issue only if Judge Robnett fails to act by November 4, 2019.

JOHN M. BAILEY

CHIEF JUSTICE

October 24, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[5]

Willson, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.