**Opinion issued August 20, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00106-CV

———————————

## CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C., Appellant

## V.

## ESL VENTURES, LLC, Appellee

———————————

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-57231**

———————————

## MEMORANDUM OPINION

ESL Ventures, LLC sued the law firm of Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. for breach of a consulting contract. At trial, after the parties rested, the trial court granted ESL Ventures' motion for a directed verdict on the issue of liability and submitted the issue of damages to the jury, which awarded

ESL Ventures $700,000. The trial court rendered judgment on the verdict and awarded attorney's fees to ESL Ventures as well. The law firm now appeals.

We affirm.

## BACKGROUND

### Contract Dispute

ESL Ventures consults with businesses on how to reduce their expenses. It entered into a contract with Chamberlain Hrdlicka to identify ways in which the law firm could reduce its information technology and telecommunications expenses.

The contract essentially contemplated two stages of consulting. In the first stage, ESL Ventures would prepare and present a baseline report identifying the law firm's existing information technology and telecommunications expenses. In the second stage, ESL Ventures would prepare and present a recommendation report identifying specific changes the law firm could implement to reduce its expenses. As part of this process, ESL Ventures would identify alternative vendors and solicit bids for their services, which would be incorporated into the recommendation report. ESL Ventures' compensation would be based on the savings realized by the firm.

In recognition of the possibility that circumstances might change and require the law firm to change course on short notice, the contract allowed the firm to terminate ESL Ventures' services before it had fully performed under the contract. This early termination provision provided for the payment of different fees

2

depending on how much work ESL Ventures had performed. If the law firm terminated the contract before ESL Ventures presented the baseline report, the firm was required to pay "an early termination fee equal to 5% of the annual expenditure or $20,000 for each project, whichever is less." If the law firm terminated the contract after ESL Ventures presented the baseline report but before it presented the recommendation report, the firm was required to pay "an early termination fee equal to 10% of the annual expenditure or $40,000 for each project, whichever is less." Finally, if the law firm terminated the contract after ESL Ventures presented the recommendation report, the firm was required to pay "an early termination fee equal to 50% of the projected savings for each project" during a specified period of time. The early termination fees set out in the contract ensured that ESL Ventures would be compensated for its work to some degree if the contract was not completed.

It is undisputed that Chamberlain Hrdlicka terminated the contract early. The parties' dispute centers on which early termination fee applies. The law firm maintains that ESL Ventures had presented the baseline report but not the recommendation report. ESL Ventures insists that it had already presented the recommendation report when Chamberlain Hrdlicka terminated the contract. Under the law firm's recitation of events, the second early termination fee of "10% of the annual expenditure or $40,000 for each project, whichever is less," applies. Whereas,

3

in ESL Ventures' reckoning, the third early termination fee of "50% of the projected savings for each project" applies and it is owed hundreds of thousands of dollars.

## Directed Verdict

The parties tried their competing positions to a jury. After the parties rested, ESL Ventures moved for a directed verdict "on just the issue of liability on failure to comply with the agreement," specifically, with its "early termination provision." ESL Ventures argued that it was undisputed that Chamberlain Hrdlicka had terminated the contract early but had not paid ESL Ventures anything under the early termination provision. Thus, ESL Ventures argued, only the issue of damages should be submitted to the jury with respect to the law firm's breach of the contract. The trial court agreed, granted the directed-verdict motion, and found the firm liable.

## Jury Charge

The charge instructed the jury that the trial court had determined "as a matter of law" that the law firm "failed to comply with the agreement." In conjunction with this instruction, the charge asked the jury to find what amount of money, if any, would fairly and reasonably compensate ESL Ventures for its damages resulting from the law firm's failure to comply with the agreement. The charge further instructed that "the damages should be measured by the early termination fee" provision of the agreement without specifying which particular subpart of the early termination provision applied. The charge posed no other contract questions.

4

**Closing Arguments**

In their closing arguments, the parties essentially hewed to their respective positions. ESL Ventures noted that the trial court had granted a directed verdict on liability and argued that it had presented the recommendation report before the contract was terminated, thus entitling it to "half of the savings" during the contractually specified period. According to ESL Ventures, this amounted to either $757,134 or $829,149, depending on how the law firm's savings were calculated.

Chamberlain Hrdlicka, in contrast, argued that to be entitled to the damages being sought, ESL Ventures had to show the jury that it had presented the recommendation report and that a recommendation was successfully implemented. "That's the language in the contract, and that did not happen. There was no presentation here," let alone a recommendation implemented, according to the firm. Chamberlain Hrdlicka further argued that ESL Ventures was not entitled to any damages, but that any conceivable award would be governed by the subpart of the early termination provision that required payment of a fee of $40,000 at most.

**Jury Verdict**

The jury found that ESL Ventures was entitled to $700,000 in damages. In order to award this amount of damages under the contract, the jury implicitly found that ESL Ventures had presented its recommendation report and therefore was entitled to an early termination fee of 50% of the corresponding projected savings.

**Final Judgment**

The trial court entered judgment on the verdict, awarding ESL Ventures $700,000 in damages. The issue of attorney's fees was reserved for the trial court, which awarded ESL Ventures $83,412.50 as well as contingent appellate fees.

**DISCUSSION**

**Issues on Appeal**

At the outset, we must emphasize the limited nature of the issues on appeal. Of note, Chamberlain Hrdlicka does not challenge the legal or factual sufficiency of the evidence. Nor has the firm raised a challenge to the trial court's jury charge.

Instead, Chamberlain Hrdlicka raises three other issues. In its first and primary issue, the law firm argues that when the trial court directed a verdict on liability, the court found that ESL Ventures had presented a baseline report but not a recommendation report and that the law firm therefore had breached the contract by failing to pay "an early termination fee equal to 10% of the annual expenditure or $40,000 for each project, whichever is less." Consequently, Chamberlain Hrdlicka maintains that the jury was not authorized to award more than $40,000 in damages, and the law firm requests that we reverse the trial court's judgment on this basis.

In addition to reversing the trial court's judgment, Chamberlain Hrdlicka requests that we render a take-nothing judgment on ESL Ventures' contract claim, arguing that ESL Ventures failed to request an explicit finding that it had presented

6

the recommendation report and thereby waived any award of damages under its theory of the case and likewise waived recovery of the lesser amount of $40,000 by not seeking it below. In the alternative, the law firm asks that we remand the case to the trial court for the entry of a judgment in the amount of $40,000 in conformity with the directed verdict (subject to a $20,000 offset the law firm claims it is due).

Based on the assumption that the trial court's judgment must be reversed, Chamberlain Hrdlicka argues in its second issue that the trial court's award of attorney's fees to ESL Ventures must also be reversed. In the event of reversal and rendition of a take-nothing judgment, the law firm maintains that the fee award must be reversed because ESL Ventures would no longer be a prevailing party. In the event of reversal and remand for entry of a judgment awarding $40,000 in damages, Chamberlain Hrdlicka maintains that the fee award must be reversed because ESL Ventures' pre-suit demand of $800,000 in damages was excessive, given that it is entitled to no more than $40,000 in damages under the early termination provision.

In addition, and also based on the assumption that the trial court's judgment must be reversed, Chamberlain Hrdlicka argues in its third issue that the case should be remanded for the limited purpose of awarding the law firm its attorney's fees because ESL Ventures rejected the firm's pretrial settlement offer of $75,000 and will have achieved a significantly less favorable judgment once this court reverses.

7

**Legal Effect of Directed Verdict**

Chamberlain Hrdlicka argues that the trial court's judgment awarding $700,000 in damages must be reversed because ESL Ventures successfully sought a directed verdict that the law firm was liable under the subpart of the early termination provision allowing for a maximum of $40,000 as an early termination fee when ESL Ventures had presented a baseline report but had not yet presented a recommendation report. ESL Ventures responds that it merely sought and received a directed verdict that the law firm had breached the contract and thus was liable for damages in some amount, with the issue of which subpart of the early termination provision controlled the amount of damages being reserved for the jury to decide.

*Standard of Review*

The parties' dispute concerns the scope or legal effect of the trial court's directed verdict on liability, rather than the sufficiency of the evidence to support the trial court's directed verdict. We review de novo the scope or legal effect of a trial court's rulings. *See Kim v. Ramos*, 632 S.W.3d 258, 265 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (stating that legal effect of court order is reviewed de novo).

*Analysis*

After both sides rested, ESL Ventures moved for a directed verdict on liability, which the trial court granted. ESL Ventures made its motion orally, the trial court

heard argument from both sides, and the trial court pronounced its decision from the bench. Thus, there is no written motion or a written order as to the directed verdict.

Both sides implicitly maintain the trial court's ruling was unambiguous, focusing on the parties' and trial court's discussion of ESL Ventures' directed verdict motion. Chamberlain Hrdlicka argues that ESL Ventures argued that the undisputed evidence showed the law firm had terminated the contract after presentation of the baseline report but had not paid the $40,000 early termination fee required under these circumstances. Thus, the law firm posits, the trial court's directed verdict on liability can only be understood as an implicit finding that the firm breached the contract in this particular way, which limits its liability to $40,000. ESL Ventures, in contrast, essentially asserts that it argued it was undisputed that the law firm had at a minimum breached the contract in this way. But ESL Ventures posits that this undisputed evidence of breach did not preclude the jury from additionally finding that ESL Ventures had also presented the recommendation report and awarding damages under the subpart of the early termination provision allowing "an early termination fee equal to 50% of the projected savings for each project" for a specified duration, rather than limiting the jury's award to $40,000.

We disagree that the colloquy on the directed verdict motion, standing alone, renders the scope or legal effect of the trial court's directed verdict unambiguous. The discussion that took place on the record renders both interpretations reasonable.

9

*See Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam) (specifying that order is ambiguous if more than one reasonable interpretation is possible).

ESL Ventures began by stating it was moving "for directed verdict on just the issue of liability on failure to comply with the agreement," specifically with its "early termination provision." Counsel for the consulting firm explained that it was undisputed that it had presented the baseline report when Chamberlain Hrdlicka terminated the contract early. He further explained that it was also undisputed that the law firm had not paid ESL Ventures anything even though the contract provided for an early termination fee of "10% of the annual expenditure or $40,000 for each project, whichever is less," under these circumstances. After hearing more argument, the trial court stated it was granting the requested directed verdict "in regards to the liability for failure to comply with the agreement." The law firm then asked for clarification regarding the scope or legal effect of the trial court's directed verdict:

| | |
|---|---|
| Law Firm's Counsel: | And you're, specifically—just so that I'm clear—granting a motion for directed verdict as to the $40,000 bullet point that [ESL Ventures' counsel] has highlighted? |
| ESL Ventures' Counsel: | On liability, they did fail to comply with the agreement; and we'll just have a question on damages. |
| The Trial Court: | Right. |
| Law Firm's Counsel: | Is that the Court's ruling? |
| The Trial Court: | Yes. |

10

Standing alone, this discussion is ambiguous. The trial court could be understood as having granted a directed verdict that Chamberlain Hrdlicka violated the specific subpart of the early termination provision allowing a fee of up to $40,000, which applies if ESL Ventures had presented the baseline report but not the recommendation report. Or the trial court could be understood as having granted a directed verdict that, at the very least, the law firm was liable for violating this subpart. Under this second understanding, the jury would decide which subpart of the early termination provision ultimately applied as part of its deliberations on the amount of damages. In other words, based on the preceding colloquy, the trial court could have concluded either that the evidence conclusively showed ESL Ventures presented the baseline report but not the recommendation report or that the evidence conclusively showed ESL Ventures presented the baseline report but that a fact issue remained as to whether ESL Ventures also presented the recommendation report.

When, as here, a trial court's ruling is ambiguous on its face, we look to the remainder of the record for clarification. *See Hemyari*, 355 S.W.3d at 626 (reciting that appellate courts interpret ambiguous orders—those that are susceptible of more than one reasonable interpretation—by looking to surrounding circumstances in order to discern their meaning); *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (instructing that "record should be considered" to interpret meaning of ambiguous order in case in which no written motion was in record).

11

Here, the remainder of the record shows the trial court rendered a directed verdict on the issue of liability in general and left it to the jury to decide whether ESL Ventures had merely presented the baseline report or also the recommendation report before Chamberlain Hrdlicka terminated the contract. In particular, the jury charge and the parties' closing arguments make this meaning indisputably plain.

If the trial court's directed verdict had the meaning that Chamberlain Hrdlicka advocates on appeal, the trial court's jury charge would have instructed the jury that the law firm had failed to comply with the contract by failing to pay the amount due upon termination after presentation of the baseline report but before presentation of the recommendation report and further instructed the jury that damages should be assessed based on the subpart of the early termination provision requiring payment of "an early termination fee equal to 10% of the annual expenditure or $40,000, whichever is less." But instead the jury charge left it an open question for the jury to resolve whether damages were to be assessed based on this subpart or another.

In the charge, the trial court instructed the jury that the court had found as a matter of law that Chamberlain Hrdlicka "failed to comply with the agreement" but did not specify how the firm had failed to comply. The trial court then asked the jury to determine what sum of money, if any, would fairly and reasonably compensate ESL Ventures for the law firm's "failure to comply with the agreement." The trial court further instructed the jury that "the damages should be measured by the early

termination fee" provision in the agreement without specifying which subpart of this provision was applicable. Because this provision provided for different early termination fees depending on whether ESL Ventures had presented the baseline report alone or had presented both this report and the recommendation report, the jury charge's damages question necessarily required the jury to decide whether both of these reports had been presented when assessing the amount of damages owed.

Moreover, both parties' closing arguments show they understood the trial court's jury charge in this fashion. ESL Ventures' closing argument focused on the recommendation report, arguing the evidence showed this report was presented to Chamberlain Hrdlicka before the law firm terminated the contract. Notably, this aspect of ESL Ventures' closing argument did not draw an objection from the law firm, as it undoubtedly would have if the trial court's directed verdict precluded an award under the subpart of the early termination provision contingent on presentation of the recommendation report. ESL Ventures expressly asked the jury to award damages ranging between $757,134 or $829,149. These amounts could only be awarded under the subpart of the early termination provision applicable when the recommendation report was presented. Again, the law firm did not object.

Instead, Chamberlain Hrdlicka responded in its own closing argument that to be entitled to the damages ESL Ventures was requesting, the consulting firm had to prove it presented the recommendation report. Chamberlain Hrdlicka advocated that

13

the evidence showed ESL Ventures did not do so before the law firm terminated the contract. The law firm argued that if it owed any damages under the contract, the subpart of the early termination provision allowing a maximum early termination fee of $40,000 was the applicable contractual provision. This counterargument tacitly acknowledges that the jury was tasked with deciding which subpart of the early termination provision applied in assessing what amount of damages, if any, the law firm owed. The parties' conflicting positions about which subpart of the early termination provision applied was the heart of their dispute about damages. If the directed verdict had resolved this dispute, both the jury charge and the parties' closing arguments would have been quite different than they were in this case.

We therefore reject Chamberlain Hrdlicka's position about the scope or legal effect of the trial court's directed verdict and overrule its first issue. Likewise, because Chamberlain Hrdlicka's second and third issues effectively depend on the law firm's first issue being decided in the firm's favor, we overrule these additional issues without further discussion. *See* TEX. R. APP. P. 47.1 (requiring opinion to be as brief as practicable while deciding all issues necessary to dispose of appeal).

14

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.