**Affirmed and Memorandum Opinion filed April 3, 2026.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00072-CV

---

**FRANCES SPANOS SHELTON, Appellant**

**V.**

**VERNON LEUSCHNER, AND AS DURABLE POWER OF ATTORNEY FOR KATHERINE LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE, Appellees**

---

**On Appeal from the 414th District Court**
**McLennan County, Texas**
**Trial Court Cause No. 2024-3035-5**

---

### MEMORANDUM OPINION

In an amendment to a trust she executed 16 months before she died, Dorothy Spanos directed that part of her ranch was to be sold as soon as practicable after her death. But after she died, her daughter Frances "Fran" Spanos Shelton acting as trustee of the trust never sold the property. The trial court appointed a receiver to do so three and a half years after Dorothy's death. Fran filed a notice of

interlocutory appeal of the receiver's appointment to the Tenth Court of Appeals on April 7, 2025, which was transferred to this Court pursuant to an equalization order issued by the Texas Supreme Court on May 1, 2025. Fran argues that the order appointing a receiver is void because it implicitly incorporated aspects of a void order previously issued by a different court and, alternatively, that the trial court abused its discretion by appointing a receiver. We hold that the district court did not abuse its discretion by appointing a receiver, and so we affirm.

# BACKGROUND

**The Trust and county court at law proceedings**

In 2017, Dorothy Spanos created the Dorothy Spanos Living Trust. She named herself trustee and transferred much of her property into the Trust, including a roughly 260-acre ranch located in Crawford, Texas. Dorothy amended the Trust several years later and directed that the ranch be partitioned "[a]s soon as practicable after [her] death." The part of the ranch referred to by the parties as the "Front 45" was "to be sold," with the proceeds distributed between Dorothy's daughter Fran, Dorothy's other daughter Katherine Leuschner (Kathy), and Dorothy's grandchildren. The Trust described the Front 45 as the "existing house; RV Shed; Hanger; and 39.322 acres including runway, front pasture, and pasture behind the home." The remaining ranch acreage was to be distributed between Fran, Kathy, and their children.[1] Although the Trust specified how much acreage was to be distributed to each beneficiary, it did not specify how the remaining acreage should be divided.

Dorothy died in September 2021, and Fran became the sole trustee. Soon after Dorothy's death, disputes arose between Fran, Kathy, and the other Trust

---

[1] As follows: 60 acres to Fran, 60 acres to Kathy, 44 acres to Robert (Kathy's Son), and 12 acres each to Kathy's other two children (Christopher and Nicole) and Fran's child (Nicholas) and two step-children (Brandon and Brianna).

2

beneficiaries over the division and distribution of the ranch, including the Front 45. Although the Trust expressly required the Front 45 to be sold, Fran instead proposed removing 12 acres from its "front pasture" and distributing it to her son Nicholas. This and other concerns relating to Fran's actions or inactions involving both the Trust and Dorothy's estate prompted Kathy to file in the McLennan County Court at Law an application for the appointment of a Temporary Administrator of Dorothy's estate and a Trust Advisor of the Trust.[2]

On March 8, 2022, the county court at law appointed former district court judge Robert Stem Temporary Administrator and Trust Advisor. According to the Trust, Stem's role was to "direct [the] Trustee in matters concerning the trust," and his broad powers included the authority to settle disputes regarding the interpretation of the Trust and to remove the trustee "with or without cause."[3]

Upon his appointment as Trust Advisor, Stem set out looking for a "pathway forward," with the division and distribution of the ranch being the "significant part of the play here." Stem did not view Fran's proposed division of the ranch as consistent with the "[c]lear" and "[u]nambiguous" terms of the Trust. As he wrote in a letter dated October 20, 2022, "There is no language in the Amended Trust that can justify sectioning out any acreage in the front pasture … all of that property is intended to be sold." Stem proposed a different division of the property—one he thought "consistent with the intent of Dorothy Spanos that she set forth in the amended trust"—and he directed Fran, as trustee, to contact a qualified surveyor "to commence the process of division as per the attached plat." A survey reflecting Stem's proposed division was prepared, but the plan got

---

[2] Article Four of the Trust contains provisions governing a Trust Advisor.

[3] The county court at law discharged Stem as Temporary Administrator and terminated the temporary administration several months later. But it extended his appointment as Trust Advisor until it ordered otherwise, Stem determined it was unnecessary, or the parties agreed to discharge him. Both orders were agreed.

"h[u]ng up" on the topic of access easements. The ranch has only one entrance and one road leading through to the back tracts (where Kathy's children's proposed tracts were located), but Fran refused to grant easements over the portions of it that would cross over her and her children's tracts.

By letter dated May 3, 2023, Stem removed Fran as trustee at the request of Kathy and her children. Stem did not detail the reasons for his decision, but he did write that the Trust "is in need of a truly neutral, detached and independent trustee." Stem later explained that Fran "was not a neutral, detached, and independent trustee" because she was responsible for "a multitude" of "breach of trust"- and "breach of fiduciary duty"-type "issues." Stem asked attorney John Malone to serve as the new trustee, and he agreed. Although Fran was no longer trustee, the parties agreed that she would continue to handle the Trust's finances.

**The district court proceedings and order appointing a receiver**

After Stem appointed Malone trustee, the two worked "hand-in-hand" to resolve the ongoing boundary, easement, and other disputes between the Trust beneficiaries. At one point, Fran offered to purchase the Front 45, but it was contingent on her owning the lone road on the ranch and Kathy constructing a separate parallel road on her tract to be used by her and her children. After discussions with the lawyers and beneficiaries, Malone decided, contrary to Fran's position, that she would have to grant an access easement for the portion of the road over her tract.

In October 2024, Fran sued Malone in McLennan County District Court for breach of fiduciary duty. Fran alleged that Malone breached duties owed to the trust beneficiaries through various acts that benefited Kathy and her children at the expense of Fran and hers. Fran also obtained an ex parte TRO prohibiting Malone

from granting easements and selling Trust property.[4]

Several months later, Vernon Leuschner, as durable power of attorney for Kathy, and Kathy's children Robert, Christopher, and Nicole (Intervenors), filed a joint petition in intervention. They seek declarations regarding the Trust property and allege that Fran committed a breach of trust, among other things.

Effective February 24, 2025, Malone resigned as trustee.[5] The same day, Fran filed a first amended original petition that dropped her claims against Malone but added claims against Intervenors and Kathy and Vernon individually, including one for a declaration determining the boundaries of the Trust property to be sold or distributed and the location of any easements. Fran also filed a motion to reaffirm or designate her as trustee or to appoint her husband Rick Shelton as trustee. Fran argued, for the first time, that the county court at law lacked subject-matter jurisdiction over matters related to the Trust, rendering void not only its almost three-year-old order appointing Stem Trust Advisor, but also all of Stem's acts in that role, including removing Fran as trustee and appointing Malone in her place.

The next day, Intervenor Vernon Leuschner filed a motion to appoint a receiver "to take possession of the Trust property, and to deal with such property according to the terms of the Trust." Citing Property Code § 114.008 and Civil Practice and Remedies Code § 64.001 as authority, he stated that Fran's district court suit and "subsequent flood of filings" had rendered Malone "unable to carry out his duties … under the Trust" and that a receiver was needed "to get the job done, and get the beneficiaries to the end of this process (that thus far has taken an inexorable 3.5 years)." Vernon noted that a trust beneficiary "is entitled to receive aid from a court in order to timely and efficiently fulfill the terms of a trust in the

---

[4]    As best we can tell from the record and briefing, the TRO is still in place.

[5]    A new trustee has not been appointed.

5

event of a breach of trust."[6]

The district court conducted a joint evidentiary hearing on Fran's motion to re-affirm or designate a trustee and Intervenors' motion to appoint a receiver. Intervenors called one witness, Stem, and submitted supporting exhibits. By order dated March 31, 2025, the district court granted Intervenors' motion in part, appointing a receiver to "take possession of and sell the [Front 45] … along with granting any easement(s) pertaining to the Front 45," and to "distribute the proceeds from the sale of the Front 45 Acres in accordance with the terms of the Trust and its amendment." The district court stated in its Finding 1(h) that it was making the appointment pursuant to § 64.001 of the Civil Practice and Remedies Code, § 114.008(a)(5) of the Property Code, "and/or the rules of equity," and that the appointment was "necessary and appropriate" in order "to minimize harm to the Trust, Trust property, and beneficiaries of the Trust, and to effectuate the terms of the Trust in an efficient and expeditious manner." The order further directed Fran "to continue to make regular and routine payments of any bills or invoices incurred by the Trust" and enjoined the beneficiaries from interfering with the Receiver's duties. The district court did not expressly rule on Fran's motion to re-affirm or designate a trustee.

**The interlocutory appeal, equalization transfer, and mandamus**

Fran timely filed a notice of interlocutory appeal to the Tenth Court of Appeals, along with an emergency motion seeking a stay of the order appointing a receiver, which was granted.[7] The appeal was then transferred to this Court pursuant to a docket equalization order issued by the Texas Supreme Court under

---

[6]     Kathy and the other Intervenors joined the motion.

[7]     *See* Order, *Shelton v. Leuschner*, No. 10-25-00108-CV (Tex. App.—Waco Apr. 9, 2025).

Chapter 73 of the Government Code.[8]

On the same day that Fran filed her opening brief in this appeal, she filed a mandamus petition in the Tenth Court raising the same issues as those in her opening brief.[9] A few days later, Fran filed in this Court an unopposed motion to transfer the interlocutory appeal *back* to the Tenth Court.[10] Fran explained that she filed the mandamus petition in the Tenth Court instead of this Court because she did not think we would have jurisdiction over it.[11] To avoid potentially conflicting judicial decisions and wasted judicial resources, Fran asked for a re-transfer.[12]

On July 31, 2025, we referred Fran's transfer motion to the Texas Supreme Court.[13] The Texas Supreme Court denied the transfer motion (in chambers) on September 26, 2025.[14] Fran then filed in this Court a new original proceeding seeking the same relief and making the same arguments as those filed in the Tenth Court.[15] For the reasons below, we deny all relief Fran requested in this interlocutory appeal, and dismiss the mandamus proceeding as moot by separate order.

---

[8] *See* Letter, *Shelton v. Leuschner*, No. 10-25-00108-CV (Tex. App.—Waco May 1, 2025); Transfer of Cases from Courts of Appeals, Misc. Docket No. 25-9016, at 2 (Tex. Apr. 2, 2025).

[9] *See* Petition for Writ of Mandamus, *In re Frances Spanos Shelton*, No. 10-25-00194-CV (Tex. App.—Waco June 26, 2025).

[10] *See* Unopposed Motion to Transfer Interlocutory Appeal from the Fifteenth Court of Appeals to the Tenth Court of Appeals and Brief in Support, *Shelton v. Leuschner*, No. 15-25-00072-CV (Tex. App.—15th Dist. July 1, 2025).

[11] *Id.* at 3, 9–10.

[12] *Id.* at 10.

[13] *See* Transfer Letter, *Shelton v. Leuschner*, No. 15-25-00072-CV (Tex. App.—15th Dist. July 31, 2025).

[14] *See* Denial of Request to Transfer Case from the Fifteenth Court of Appeals, Misc. Docket No. 25-9072 (Tex. Sept. 26, 2025).

[15] *See* Petition for Writ of Mandamus, *In re Spanos Shelton*, No. 15-25-00152-CV (Tex. App.—15th Dist., Oct. 6, 2025).

# DISCUSSION

Fran argues that the district court abused its discretion by appointing a receiver because no evidence supports the appointment under any of the grounds listed in finding 1(h). We hold that the district court acted within its discretion by appointing a receiver under § 114.008(a)(5) of the Property Code, and we reject Fran's various challenges to the order.

Appellate courts review an order appointing a receiver for an abuse of discretion.[16] A trial court abuses its discretion not only when its acts are arbitrary or unreasonable, but also when they are "without supporting evidence."[17] Under the abuse-of-discretion standard, legal sufficiency is not an independent ground of error, but a relevant factor in deciding whether the trial court abused its discretion.[18] Evidence is legally insufficient when, as relevant here, there is a complete absence of evidence of a vital fact.[19] We view the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not.[20]

## I.    No Abuse of Discretion

A court may appoint a receiver if it finds that "a breach of trust [] has occurred or might occur." TEX. PROP. CODE § 114.008(a)(5). The Property Code defines "breach of trust" to mean "a violation by a trustee of *a duty* the trustee

---

[16]    *See, e.g.*, *Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698, 703 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied).

[17]    *Transcor Astra Grp. S.A. v. Petrobas Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022).

[18]    *Dao v. Mission Bend Homeowners Ass'n, Inc.*, 667 S.W.3d 304, 317 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

[19]    *United Rentals of N. Am., Inc. v. Evans*, 668 S.W.3d 627, 640 (Tex. 2023).

[20]    *425 Soledad, Ltd. v. CRVI Riverwalk Hosp., LLC*, 709 S.W.3d 551, 561 (Tex. 2024).

owes to a beneficiary."[21] A trustee has a "general duty" to administer a trust "in good faith *according to its terms* and this subtitle."[22]

The district court could reasonably have determined that appointing a receiver was appropriate because Fran failed to administer the Trust according to several express terms when she was trustee.

*First*, the district court found that it was "necessary and appropriate" to "take possession of and sell" the Front 45 and to "distribute the proceeds" so as to "effectuate the terms of the Trust *in an efficient and expeditious manner*." (emphasis added). The timing reference relates to the Trust amendment's requirement that the Front 45 be sold "as soon as practicable" after Dorothy's death. But that never happened in the 20 months that Fran was the trustee. Although there may be some fault on both sides for the disputes that arose, it was no abuse of discretion to appoint a receiver *three-and-a-half years* after Dorothy died to do what Fran failed to do much sooner.

*Second*, rather than sell the entire Front 45 as Dorothy directed, Fran wanted to remove 12 acres from its "front pasture" and distribute it to her son Nicholas. As Stem testified at the hearing on the motion to appoint a receiver, Fran's carving out part of the Front 45 and "put[ting] one of her children up front" was "not consistent with the trust" and "a clear violation" of it: "there's no language [in] the amended trust that can justify sectioning out any acreage in the front pasture. All that property was intended to be sold."[23]

---

[21]    TEX. PROP. CODE § 111.004(25) (emphasis added).

[22]    *Id.* § 113.051 (emphasis added); *see* RESTATEMENT (THIRD) OF TRUSTS § 76 (2007) ("The trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law.").

[23]    Fran disputes that her past breaches could be "remedied" by appointing a receiver, but the breaches occurred while she was trustee and continued up to the time a receiver was appointed, as evidenced by the district court's reference to the "extraordinary controversy surrounding the sale of the Front 45" and the parties' many filings during years of contentious litigation.

## II. Fran's Arguments

Fran argues that the district court's order appointing a receiver is void because it "silently," "implicitly," or "indirectly" "adopts and incorporates aspects of" the McLennan County Court at Law's orders, a court she alleges had jurisdiction to administer matters related to the *estate* but not the *trust*. We need not decide whether the county court at law had jurisdiction because the district court's order does not incorporate any of the county court's orders. We construe the district court's order according to what it says, not what it doesn't say,[24] and Fran acknowledges on Reply that the district court's order appointing a receiver "does not state that it is adopting, enforcing, or incorporating aspects of the county court's void orders." Fran directs us to several habeas corpus cases,[25] but unlike in those cases, the district court's order appointing a receiver is not predicated on any part of a prior county court at law order.[26]

Fran complains that Stem was the only witness at the hearing on the motion to appoint a receiver. But the district court did not prevent Fran from calling any witnesses or testifying herself. Although it is true that some of Stem's testimony

---

[24] *See Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) ("The same rules of interpretation apply in construing the meaning of a court order of judgment as in ascertaining the meaning of other written instruments."); *see Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011).

[25] *In re Harrison*, No. 14-15-00370-CV, 2015 WL 5935816, at *1 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding); *In re McCray*, No. 05-13-01195-CV, 2013 WL 5969581, at *1–2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding).

[26] Regarding the statement in the order that Fran references on page 1292 of the clerk's record ("Based on the evidence admitted, and testimony of the Trust Advisor, Judge Robert Stem, the main issue giving rise to this controversy is the sale of the Front 45 Acres."), that is a statement of fact, appropriately located in the "Findings and Conclusions" part of the order. Regarding the statements on page 1295 (one states that the trustee, Trust Advisor, and beneficiaries "shall reasonably assist the Receiver in fulfilling his duties and obligations," and the other states that the Receiver "shall promptly give notice of his appointment" to others, including "the Trust Advisor"), those are standard instructions accompanying the appointment of a receiver.

related to his role as Trust Advisor, including removal of Fran as trustee, most of his testimony was derived from his personal knowledge based on his observation of the parties' relations and actions.[27] Having observed the family dynamics, it was his personal opinion—not legal opinion—that there "will be a never ending merry-go-round here" of future lawsuits without the appointment of a receiver, and that "[t]he only way to save these people from themselves is the appointment of a receiver." Indeed, as Stem explained, whereas another trustee could be sued by either side, resulting in yet more litigation, a receiver would be entitled to derived judicial immunity for actions taken in the course and scope of those duties.[28] Fran accuses the district court of giving "evident deference" to Stem's "impassioned and partisan testimony," but she concedes that "the trial court could have believed Judge Stem." We cannot disregard his testimony unless no reasonable trier of fact could believe it.[29]

Fran challenges several other parts of the order appointing a receiver. She argues that requiring her to pay the Trust's bills represents an unconstitutional taking of her property because it requires her to use her personal funds. But the order does not state or imply that Fran must use her personal funds; it merely orders her "to *continue* to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business."[30] (emphasis

---

[27] *See* TEX. R. EVID. 701 (providing that a lay witness may testify in the form of an opinion if it is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue.").

[28] *See Clarke as Next Frind of B.D.C. v. Wolf*, 717 S.W.3d 918, 924 (Tex. App.—Houston [14th Dist.] 2025, no pet.).

[29] *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

[30] Stem testified that everyone had agreed that Fran would continue to handle the Trust's finances even after she was removed as trustee. And in a letter to the district court *after* it signed the order appointing a receiver, Fran's counsel confirmed that Fran isn't opposed to paying the Trust's bills, but that she was not a signatory on a Trust account.

added). Fran contends that the part of the order enjoining the beneficiaries from taking any action that would interfere with the Receiver's duties is overly-broad and "would theoretically keep [her] from filing her notice of interlocutory appeal and filing this brief, or taking any other legal action, even though she has legal and statutory rights to do so." But the order does not divest Fran of any legal rights, nor will we construe an order to implicitly bar an appeal that state law allows.

Insofar as Fran suggests that the appointment of a receiver is a harsh remedy only to be used as a last resort, § 114.008(a)(5) of the Property Code does not require a showing that no other adequate remedy exists.[31]

Lastly, Fran recently requested that we review an order signed by the district court on February 11, 2026, granting Judge Stem's fee application and ordering Fran to pay him with Trust funds.[32] Fran argues that, like the district court's order appointing a receiver, the February 11 order is "based on the earlier void orders of the county court at law," and therefore is also an abuse of discretion. Having rejected Fran's argument that the district court's order is void for that reason, we reject her argument that the February 11 order is void for the same reason.[33]

We hold that the district court did not abuse its discretion by appointing a receiver for the limited purpose of selling the Front 45. We overrule Fran's issues.

## CONCLUSION

We affirm the district court's order appointing a receiver and lift the stay issued by the Tenth Court of Appeals on April 9, 2025.

---

[31] *Cf. Estate of Price*, 528 S.W.3d 591, 593 n.2 (Tex. App.—Texarkana 2017, no pet.) (explaining that the appointment of a receiver under the Business Organizations Code requires a showing of no other adequate remedy at law, but not the Civil Practice and Remedies Code); *see Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 136 S.W.2d 800, 806 (Tex. 1940).

[32] *See* TEX. R. APP. P. 29.6(a)(2).

[33] We deny as moot Fran's request for a stay of the February 11 order pending our decision.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.